**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| JOSEPH D. ZARKOWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 6:05-0196-PMD-WMC |
| v. ) | |
| ) | |
| JO ANNE B. BARNHART, ) | **ORDER** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, codified at 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner's final decision, which denied Joseph D. Zarkowski's ("Zarkowski" or "Plaintiff") claim for Disability Insurance Benefits ("DIB"). The record includes a Report and Recommendation ("R & R") of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a), recommending that the Commissioner's final decision be reversed and remanded for further proceedings. The Commissioner timely objected to the Magistrate Judge's recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that party may object, in writing, to a Magistrate Judge's R & R within ten days after being served with a copy).

**BACKGROUND**

**Administrative Proceedings**

On September 20, 2002, Plaintiff filed an application for DIB alleging disability beginning December 26, 2001. The application was denied initially and on reconsideration. On October 7, 2004, Plaintiff requested a hearing, which was held April 26, 2004. Following the hearing, the

administrative law judge ("ALJ") determined that Plaintiff was not entitled to benefits. This decision became the final decision of the Commissioner when it was adopted by the Appeals Council on December 2, 2004. Plaintiff then appealed this decision to the Federal District Court. The Magistrate Judge issued a R & R, recommending that the Commissioner's final decision be remanded to the ALJ for further consideration. This court now considers this recommendation and the objections filed in deciding whether the ALJ's findings of fact are supported by substantial evidence and whether proper legal standards were applied.

**Evidence Presented**

Plaintiff Zarkowski was born August 28, 1960 and has a high-school education with some technical training. (Tr. at 62.) His past work experience includes employment as a mechanic, carpenter, welder, and truck driver. (Tr. at 57.)

Plaintiff began experiencing back pain at work in August 2000, and an MRI subsequently showed a herniated disc at L5-S1. He underwent an L4-5 laminectomy and discectomy on September 5, 2000, and initially did very well after the surgery, with only mild back pain. Spinal specialist Dr. John Johnson ("Dr. J. Johnson") indicated in November 2000, that it was "very unlikely that [Plaintiff] would be able to return to his previous level of work," but that he was a good candidate for vocational rehabilitation. In February, 2001, Dr. J. Johnson recommended that Plaintiff not return to heavy work, but released him to "full duty work." Plaintiff returned to work in March 2001, and did well until October 2001, at which point he developed gradual onset of low back pain, which increased over the next few months. He stopped working on December 26, 2001 (Tr. at 125, 154-58.)

Plaintiff returned to Dr. J. Johnson on February 1, 2002. Dr. J. Johnson assessed L4-5

radiculopathy and ordered a MRI. The MRI revealed large left paracentral disc herniation at L5-S1 with mild impingement on the S1 nerve root. This was a large disc disruption with some degenerative changes. (Tr. at 153-54.) At a February 26, 2002, follow-up visit, Dr. J. Johnson noted the disc disruption and degenerative changes. He opined that Plaintiff could not return to heavy work and provided analgesic medication for his arthritis and a lumbar steroid injection. (Tr. at 150-51.) On March 15, 2002, Plaintiff returned to Dr. J. Johnson, who provided another lumbar steroid injection. (Tr. at 149, 151.)

On April 30, 2002, a State agency physician reviewed Plaintiff's records and completed a "Physical Residual Functional Capacity Assessment" relating to his expected abilities as of December 2002, 12 months after the onset of his alleged disability. This physician found that Plaintiff would be able to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day. The physician found that Plaintiff would be able to frequently kneel, crouch, and occasionally climb, stoop, and crawl. (Tr. at 110-17.)

Plaintiff returned to Dr. J. Johnson on May 7, 2002, indicating that despite taking Bextra for his arthritis, he still had moderate low back and leg pain. Dr. J. Johnson recommended repeat surgery and referred him for a consultation. (Tr. at 147.)

On June 25, 2002, spinal surgeon Dr. Donald Johnson ("Dr. D. Johnson") recommended that Plaintiff undergo a repeat laminectomy and discectomy with removal of the current disc herniation. (Tr. at 145-46.) On August 1, 2002, Dr. D. Johnson diagnosed status-post surgery for lumbosacral radiculopathy secondary to L5-S1 disc disruption. Dr. D. Johnson opined that Plaintiff was out of work and had been "unable to perform any type of work for 1 year." (Tr. at 145.)

On August 7, 2002, Dr. D. Johnson performed Plaintiff's second back surgery. (Tr. at 104, 159.) Dr. D. Johnson completed a "Patient Status Report" and indicated that Plaintiff could not perform any type of work for one year. (Tr. at 145.) At a follow-up visit in August, 2002, Dr. D. Johnson indicated that Plaintiff was "healing well" and "doing excellently." (Tr. at 144.)

On January 21, 2003, Dr. D. Johnson found that Plaintiff had reached maximum medical improvement. He assigned a 20% whole person impairment, but noted that this rating did not speak to disability or any work issues. He noted that Plaintiff "would have a difficult time with employment in the types of work he has done in the past." (Tr. at 142.)

In March of 2003, Plaintiff's case was reviewed by a State agency physician[1] and by orthopaedist Dr. Edward Blocker.[2] Both examinations led the doctors to conclude that Plaintiff's injuries did not preclude him from performing some "light work." (Tr. 125-26). The State agency physician further found that Plaintiff could currently lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day.

On April 18, 2003, Dr. D. Johnson completed a "Lumbar Spine Impairment Questionnaire" in which he found that Plaintiff had a "poor-guarded" prognosis. He found that in an eight-hour day, Plaintiff could sit for two hours and stand or walk for two hours; Plaintiff could sit and stand in 30 minute intervals and that he should not stand or walk continuously. Dr. D. Johnson indicated that

---

[1] This physician reviewed Plaintiff's record's and completed a "Physical Residual Functional Capacity Assessment."

[2] Dr. Blocker met with Plaintiff for approximately three minutes; asked Plaintiff to move his arms and shoulders, but did not ask him to bend his back, nor did he examine his back. (Tr. 195-96.)

Plaintiff could lift and carry five pounds frequently and 10 pounds occasionally, and that he could never lift over 10 pounds. He found that Plaintiff would need to take breaks every 30 minutes for 15 minutes at a time, that he could not perform a job requiring sustained activity, and that he was likely to be absent more than three times per month. He further found that Plaintiff needed to avoid wetness, heights, pushing, pulling, kneeling, bending, and stooping. (Tr. at 118-24.) Dr. D. Johnson indicated that these limitations were permanent. (Tr. at 140.)

Plaintiff returned to Dr. D. Johnson on April 23, 2003, with complaints of ongoing pain. Dr. D. Johnson indicated that this was expected due to disc space collapse after the second surgery. He indicated that Plaintiff's prognosis for recovery was limited, and opined that he met the requirements for Social Security disability benefits. (Tr. at 140.)

At the hearing on April 26, 2004, before an ALJ, Plaintiff testified as to his daily activities and the severity of his physical limitations. (Tr. at 174-199.) Dixon Pearsall, Ph.D., a vocational expert, also testified that, assuming that Plaintiff was capable of light exertional work, Plaintiff would be able to perform several available jobs within the national economy. (Tr. at 200-202.) Dr. Pearsall also testified that the Dictionary of Occupational Titles ("DOT") did not reference the sit/stand option, but that he was familiar enough with the jobs to know that they allowed for Plaintiff to either sit or stand as was necessary. (Tr. at 202.) Following this hearing, the ALJ found that Plaintiff was not disabled as meant by the Social Security Act.

## DISCUSSION

### I.     Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the

court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews *de novo* those portions of the R & R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court has reviewed the entire record, including the R&R and the Commissioner's objections. Pursuant to this review, the court concludes that the Magistrate accurately detailed the facts at issue and applied the correct principles of law. Accordingly, the court adopts the R & R to the extent consistent with this Order and incorporates it into this Order.

## II.    Standard of Review

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in

-6-

original).

### III.     Commissioner's Final Decision

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work.

*Mastro*, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. *See Walls*, 296 F.3d at 290.

Applying this framework, the ALJ found (1) that Zarkowski met the disability insured status requirements, (2) that he has not engaged in substantial gainful activity since his onset date, (3) that his impairments, considered alone or in combination, are severe but do not meet or equal a listing impairment, (4) that he retains the residual functional capacity to perform "a significant range of light work" with certain restrictions, and (5) that, although he is unable to perform any of his past relevant work, the Commissioner met the burden of demonstrating the existence of other jobs in significant number in the national economy. Accordingly, the ALJ found that Zarkowski was not under a "disability" as defined by the Social Security Act.

## IV.   Analysis

The Magistrate recommended that the ALJ erred (1) by failing to give appropriate weight to the testimony of Zarkowski's treating physician, Dr. D. Johnson; (2) by making an improper credibility analysis of Zarkowski's pain; and (3) by improperly relying on the vocational expert's testimony. The Magistrate therefore recommended reversing the ALJ's denial of benefits. The Commissioner objects to each of these conclusions.

**1.     The Commissioner objects that the ALJ did give appropriate weight to the testimony of Dr. D. Johnson, Zarkowski's treating physician.**

Objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a disability case and may not be discounted by the ALJ. *See, e.g., Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987) (holding that treating physician's opinion is entitled to great weight if not contradicted by persuasive evidence); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1987) (stating that the treating physician's opinion is "entitled to great weight for it reflects an expert judgment based on a continuing observation of the

patient's condition over a prolonged period of time" and should be disregarded "only if there is persuasive contradictory evidence"). When evaluating the opinion of a treating physician, the ALJ must consider whether the opinion should be given controlling weight. *See* 20 C.F.R. § 404.1527(d)(2). Controlling weight is afforded where the opinion (1) is from a treating source; (2) is a medical opinion concerning the nature and severity of the plaintiff's impairment; and (3) is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *See* S.S.R. 96-2p; 20 C.F.R. § 416.927 (emphasis added). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996); *see also Hunter,* 993 F.2d at 35 (noting that "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.").

In this case, Dr. D. Johnson, Zarkowski's treating orthopedic surgeon, reported in a "Lumbar Spine Impairment Questionnaire" in April of 2003 that Plaintiff had functional limitations that would preclude him from being able to perform full time work, as he could only sit for a total of two hours during the day and could not lift more than 10 pounds. (Tr. at 118-24.) Dr. D. Johnson further found that Zarkowski would need to take breaks every 30 minutes for 15 minutes at a time, that he could not perform a job requiring sustained activity, and that he was likely to be absent from work more than three times a month. (Tr. at 123.)

Despite this opinion by the treating physician, the ALJ found that Zarkowski was capable of performing light work, requiring sitting, standing, or walking for 6 hours of an 8 hour day. (Tr. at 19.) The Commissioner argues that the ALJ correctly did not credit the opinion of Dr. D. Johnson because this opinion "departed substantially from the rest of the evidence of record." (Tr. at 18.)

Specifically, the Commissioner states that because this opinion (1) is in direct conflict with Dr. D. Johnson's January 2003 opinion and (2) is contradicted by the opinions of other doctors in the record, the ALJ correctly afforded this opinion "significantly less weight." This court does not agree.

First, Dr. D. Johnson's January 2003 opinion does not substantially contradict his April 2003 opinion. In this January opinion, Dr. Johnson specifically stipulates that his assessment "does not speak to any work issues", but, at the very least, "[c]ertainly, [Plaintiff] will have a difficult time with employment in the types of work he has done in the past." (Tr. at 142.) This qualified statement can hardly constitute a contradiction of the April statement that Plaintiff is unable to perform light work. Accordingly, the court does not agree with the Commissioner that this earlier statement constitutes a discrepancy in Dr. D. Johnson's opinions so as to justify discrediting the treating physician's opinion.

Second, the fact that other non-treating physicians opined that Plaintiff was capable of light work does not establish that Dr. D. Johnson's opinion should be entirely discredited. The court agrees with the Commissioner's assertion that "to the extent there was a conflict between various physicians' opinions in the record, it was the ALJ's duty to weigh the evidence, resolve material conflicts, and decide the case accordingly;" however, even where the treating physician's opinion is not entitled to "controlling weight" because it is inconsistent with the other substantial evidence in the case record, the treating physician's opinion should not be wholly rejected. (Objections at 3.) A treating physician's opinion, even when contradicted by other evidence, is entitled to deference and must be weighed based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence

supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical questions at issue; and (6) other factors which tend to support or contradict the opinion. *See* 20 C.F.R. 416.927. Finally, the ALJ must always explain the weight afforded a treating physician's opinion. *See Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987) (remanding a claim for disability benefits because the ALJ did not explain adequately why he credited one doctor's views over those of another doctor); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *see also* 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

In this case, the court finds that the ALJ wholly rejected Dr. D. Johnson's testimony after deciding not to give it controlling weight, rather than assessing, and explicitly stating, the amount of weight it should be accorded pursuant to the factors set forth in 20 C.F.R. 416.927. Accordingly, as the Magistrate reasoned, the ALJ's decision to discredit Dr. D. Johnson's testimony was not supported by substantial evidence and a remand is necessary for a proper evaluation of Dr. D. Johnson's opinion.

**(2)     The Commissioner argues that the ALJ properly evaluated the credibility of Plaintiff's subjective pain.**

Though a subjective allegation of pain, standing alone, 'shall not be conclusive evidence of disability,' where the claimant proves the existence of a medical condition that could cause pain, the claimant's subjective complaints must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective evidence. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994) (quoting 42 U.S.C. § 423(d)(5)(A)). In this case, it is undisputed that Plaintiff's injuries, arthritis and a herniated disc, are of the nature and type that can

produce significant pain. Nonetheless, the ALJ discredited Plaintiff's claims of severe back pain because Plaintiff "does not regularly take narcotic-based pain relieving medications;"because he waited approximately five weeks[3] after the onset of his impairment before receiving medical treatment; and because his described daily activities, "including carrying 6 wheelbarrows of dirt and gardening in April, 2002," are not "as limited to the extent one would expect, given his complaints of disabling symptoms." (Tr. at 18.)

The Magistrate found that the reasons the ALJ cited for discrediting Plaintiff's claims of pain were not supported by the record. The Magistrate notes that the record shows that Plaintiff is allergic to codeine-based medications, but has been prescribed non-codeine-based medications for pain by Dr. Johnson. (Tr. at 118-22.) The ALJ failed to discuss these medications, which include Vioxx, Bextra, and Propoxy. Also, the Magistrate concluded that the five to six week gap between the alleged onset of injury and the date Plaintiff saw Dr. J. Johnson for treatment is not so substantial as to call into question the severity of the impairment. Further, the record shows that Plaintiff made his appointment with Dr. J. Johnson in the first week after the alleged onset of his injury. (Tr. at 186.) Finally, the Magistrate found that the sporadic attempts at activity cited by the ALJ were made while Plaintiff was undergoing pain management with Dr. J. Johnson during the early part of 2002, prior to his redo laminectomy in August 2002. Accordingly, the Magistrate found that Plaintiff's gardening and other limited activities did not discredit his subjective claims of later pain.[4]

---

[3] Plaintiff's alleged onset of disability was December 26, 2001. His first appointment with Dr. J. Johnson was on February 1, 2002.

[4] The court also notes that under Fourth Circuit precedent, Zarkowski's ability to perform some physical tasks (at his own pace and in his own manner) is insufficient to establish that he can engage in any substantial, gainful activity. *Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir. 1980) (claimant's ability to do housework and shop does not establish that

-12-

Accordingly, the Magistrate recommended that the ALJ's refusal to credit Plaintiff's subjective pain was improper.

The Commissioner now argues, citing no additional supporting evidence, that the ALJ's original assessment of Plaintiff's credibility was proper. The court does not agree. The ALJ's determination is contrary to the Fourth Circuit's clear instructions, time and time again, that a claimant "need only show objective medical evidence of some condition that could reasonably be expected to produce the pain alleged, not objective medical evidence of the pain itself." *Thompson v. Sullivan,* 980 F.2d 280, 282 (4th Cir. 1992) (quoting *Jenkins v. Sullivan*, 906 F.2d 107, 109 (4th Cir. 1990); *see also Myers v. Califano,* 611 F.2d 980, 983 (4th Cir. 1980); *Foster v. Heckler,* 780 F.2d 1125, 1129 (4th Cir. 1986); *Walker v. Bowen,* 889 F.2d 47, 49 (4th Cir. 1989). Further, for the reasons as articulated by the Magistrate, the court concludes that the ALJ's reasons for discrediting Plaintiff's subjective pain are not supported by substantial evidence in the record.

**(3)     The Commissioner also argues that the ALJ properly relied on the vocational expert's testimony.**

In finding that Plaintiff was not disabled, the ALJ relied upon the vocational expert's ("VE") testimony that, based on the limitations given in the ALJ's hypothetical, Plaintiff was capable of performing three jobs: storage facility clerk, convenience store attendant, and grader/sorter. (Tr. at 201.) These jobs are considered to be "unskilled." On cross-examination, the VE testified that "you

---

she can engage in gainful activity); *Cornett v. Califano*, 590 F.2d 91, 94 (4th Cir. 1978) ("The ability to work only a few hours a day or to work only on an intermittent basis is not the ability to engage in 'substantial gainful activity.'"); *see also Totten v. Califano*, 624 F.2d 10 (4th Cir. 1980) ("An individual does not have to be totally helpless or bedridden in order to be found disabled under the Social Security Act."). Thus, even if Zarkowski had gardened following his August surgery, this would not be a proper basis upon which to find Zarkowski's testimony regarding his limitations to be incredible.

-13-

can perform the primary function of the[se] job[s] sitting or standing at your discretion." (Tr. at 204.) The VE admitted that the Dictionary of Occupational Titles ("DOT") "does not reference sit/stand" requirements of these jobs; nonetheless, the ALJ noted in his opinion that the VE's opinions were consistent with the occupational information provided in the DOT. (Tr. at 202.) The ALJ relied upon the VE's testimony that these jobs could be performed while sitting or standing at Plaintiff's discretion in finding that Plaintiff was capable of such work. (Tr. at 21.)

The Magistrate noted that Social Security Ruling 83-12 addressed the issue of the availability of the option between sitting and standing for unskilled jobs:

> There are some jobs in the national economy - typically professional and managerial ones - in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand a [VE] should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253, *4. The Magistrate then asserted that the VE's testimony - that these unskilled jobs gave the option of standing or sitting - conflicted with Social Security Ruling 83-12 and was not supported by the DOT. Accordingly, the Magistrate found that, because the ALJ made no effort to reconcile the apparent conflict between the VE's testimony and the DOT and Social Security Ruling, the ALJ improperly relied on the VE's testimony, and remand is necessary.

The Commissioner now argues that the ALJ properly relied on the VE's testimony because the VE testified that, through his years of experience, he was familiar enough with the jobs cited to know they allowed for a sit-stand option. (Tr. at 202.) Thus, the VE adequately clarified that unskilled jobs, specifically ones that offer a sit-stand option, were available.

The court agrees with the Commissioner that the VE properly testified from his own expertise and experience that a sit-stand option is available in the named jobs. The Social Security Ruling cited by the Magistrate does not assert that no unskilled jobs provide a sit-stand option; it merely states that a VE is necessary to testify as to the availability of this option for unskilled jobs. This is exactly what the VE did here. Accordingly, the court finds that the ALJ properly relied upon the VE's testimony that the positions of storage facility clerk, convenience store attendant, and grader/sorter provide a worker with the option of standing or sitting. [5]

## CONCLUSION

After a careful examination of the record as a whole, the court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore, **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **REVERSED**, and the matter is **REMANDED** for reconsideration.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**January 24, 2006**

---

[5] The court does note that the hypothetical posited to the VE during the hearing did not take into account several of the more severe of Plaintiff's functional limitations as described by Dr. D. Johnson. Depending on whether Dr. D. Johnson's opinion is ultimately deemed to be credible, the appropriate hypothetical to ask of the VE may change drastically.